The Honorable, the Judges of the United States Court of Appeals for the Fourth Circuit. Oyez, oyez, oyez, all persons having any manner or form of business before the Honorable of the United States Court of Appeals for the Fourth Circuit are admonished to draw a nine and give their attention, for the Court is now sitting. God save the United States and this Honorable Court. Please be seated. Welcome you. We're happy to be here with you today. We will hear argument first in number 21-6206, Nelson v. Doe. Mr. Shorman, when you're ready. Good morning, and may it please the Court. My name is John Shorman, and I represent the appellant, Edward Nelson. Mr. Nelson is an inmate in federal prison, has been for some time. Can you talk just up a little bit, a little bit louder? Yes, ma'am. Thanks. He seriously injured himself back in March of 2016 when he was in a federal transfer facility in Oklahoma. He fell off a bunk, landed on his head. It was about six feet, and he damaged his spine. From that point forward, he's been under treatment until the present time, but it's actually took about four years for him, for the full diagnosis of his injuries to be developed. He now suffers epilepsy, Parkinson's, a host of neurological problems, and severe spinal injuries that might, according to the latest tests, might actually be fatal. But over the course of that four years, he was subjected to what can only be described as deliberate indifference of his condition as he was transferred through several facilities in the federal system. This portion of the case concerns his time at the United States prison in Hazleton, and the defendants in the case are the warden, Mr. Coakley, a lieutenant in the special housing unit, Mr. Sewell, and two doctors, Drs. Mims and Bird. The district court dismissed the case under both a motion to dismiss, combined with a motion for summary judgment, on grounds concerning what we call the Hazleton defendants, the warden and the lieutenant, finding that there was a lack of deliberate indifference. Since that decision and since the briefing in this case, this court has issued an opinion in the case Fala v. Amonette. Fala is spelled P-F-A-L-L-E-R versus Amonette, A-M-O-N-E-T-T-E. It was published by this court on December 15, 2022, and it discusses the analysis of deliberate indifference. Essentially, there is the objective prong and the subjective prong of deliberate indifference. The objective prong is a constitutional right. It has been recognised that medical care of a serious condition is a constitutional right, and that is really not an issue in this case. What is an issue in this case is the dismissal on grounds and a finding that there was no deliberate indifference, primarily because, according to the district court, the two non-medical defendants, Warden Coakley and Lieutenant Sewell, were relying upon medical advice. That is not actually found in the record. The amended complaint lays out that both the warden and the lieutenant studied the records, knew that this man could not stand unassisted, knew that this man required a wheelchair. Let me ask you a question. I understand that part of your complaint. I do not actually understand how the doctors are implicated in your theory of liability, because it seems to be that your claim is that your client was put in a shoe without an assistive device, but your brief says expressly that the two doctor defendants had nothing to do with that. It was not a medical determination. They had nothing to do with putting him in there, and they did not recommend that he should go in there without an assistive device. How are they on the book on count one? They did not recommend that he be placed in the SHU without a device. That is true. It was not a medical judgment. Putting him in there had nothing to do with a medical judgment. But up to that point, he had asked for assistive devices. This man could not walk. This man could not stand without support. But throughout his travails, it was assumed he was lying or putting it on or trying to pull one off on the system. You are saying that your complaint as to the doctors is not about the placement in the SHU. It is just about a prior failure to prescribe an assistive device? Yes, ma'am. It is the lack of the treatment that he received. We will see that in count one. As to count one, it really does focus on the district court's decision that there was no participation in the decision to place him in the SHU without an assistive device. I think that is contradicted by the amended complaint where it is laid out that his records indicated that this man could not stand. Now, he was placed in the SHU on two separate occasions with three months on each occasion. Just the fact that he went in there a second time after his condition when he came out the first time would indicate that this man obviously needed an assistive device. If he was faking it, then he deserves an Academy Award. This man developed sores on his knees because he could not walk. He was dragging himself around, sores on his knees where it is undisputed that he received medical treatment to draw off the pus from sores that he developed. He also strained his back severely by literally dragging himself across the floor. When he did get out, his medical condition and spinal injuries were, of course, seriously exacerbated. Can you talk to us a little bit about the Bivens issue? As we stated in the supplemental brief, in terms of the Bivens issue, this is not presenting a new set of facts. This case is very much analogous to Carlson. Carlson was a case where an individual, an inmate in a prison, was denied medical care. He sued on a personal injury. In this case, I think the only real distinction between this case and Carlson is the fact that this inmate is not yet dead. Carlson, of course, he died and was brought by his estate. I do not believe we are going into any new area that would make the Abbassey case applicable to this set of facts. I believe that there is no alternative to Bivens outside of the FTCA. There is no government alternative. The government raises the grievance procedure as an alternative that my client could have participated in. He filed one after another, one after another, complaining about his worsening medical condition. They were all denied. All those really are, in this case, is an exhaustion of administrative remedies. They are not an alternative to this lawsuit. They are not an alternative to Bivens. Can I ask you on the Bivens question? I can think of two possible distinctions, and I just want to give you a chance to address them. One would be that your case is not at least entirely about a denial of medical treatment. As it is alleged in the complaint and as you explain in your brief, the decision to put your client in the shoe without an assistive device was an administrative decision, not a medical decision, not made by doctors. That does seem to me that it takes us a little bit out of Carlson, because it is not at least mostly just about medical determinations. It appears to at least be intertwined with this administrative decision to put your client in the shoe. Obviously, yes, there is an overlapping administrative decision. If he had been properly treated, then I do not believe that it could possibly be the case that he would be sent to the shoe without at least a walker, if not a wheelchair. He had asked for that. It is not as though the day before he was going to be sent to the shoe, he suddenly pretended he could not stand. He could not stand when he entered the Hazleton facility. The record shows that he was in need of support. The medical record shows that he was examined and the doctor found that there was no objective need for an assistive device. Precisely, because the doctor was not adequately treating this individual, because when he was sent outside the system to Dr. Drew at the West Virginia facility, university, it was found that everything he had been complaining about was true. He had a host of… I got us a little bit off. I apologize. I got you back into the facts. I did want to raise this other issue or at least concern I have about the Bivens issue. As you presented the case at the very beginning, you did explain this is part of a four-year claim involving four different facilities, a huge number of defendants, some doctors, some not doctors, spanning a four-year period of time involving not only the treatment at each facility but also sort of continuity of care between them. And it does strike me that the scale of this case is very different from Carlson. Is that something we would look at? Because in Tate, we talked a little bit about that. Well, it's very unfortunate that the scale of this case is driven by the fact that he was repeatedly denied adequate medical care. Objectively, this man is suffering from the incident from 2016. That's when it all started. He's in much worse condition today than he would have been had he received adequate medical care. The fact that this portion of the case only relates to Hazleton, I don't believe distinguishes it from Carlson because there are other aspects outside of the responsibility of these defendants. But in terms of Abassi and the court's decision that it was not going to extend Bivens to new fact situations, I don't believe that this case presents a new fact situation. It's certainly within the ambit of medical care in prisons. And, yes, it was an administrative decision in which two administrators participated in to place this man in the shoe. Yet that decision largely flowed from this misdiagnosis or failure to diagnose or simply failure to believe their own eyes that this man couldn't stand and walk. Mr. Shorman, Mr. Shorman, if I could ask you a question, you alleged in your complaint that Mims and Bird approved the decision to place him in the S.H.U. without the assisted device. You said that Mims and Bird knew Nelson could not walk and approved the decision to place him in twenty three one lockdown without a wheelchair or walker. And I seem to be hearing you say now that they didn't actually approve the decision that they so. So which is it? Did they approve the decision or not? Yes, I believe that may have been inartfully raised, Your Honor. They did not approve the decision initially, but they were certainly became aware because of this man's. He was there for two separate periods of three months, six months total. And as he was dragging himself across the floor, his medical condition worsened. Even after that period of time, the doctors didn't come in and say, give this man a medical, give this man an assisted device, a walker or a wheelchair because because he's because he's injuring himself. So so there was, if not approval to go into S.H.U. without those those devices. There was a consent that he can continue to remain in S.H.U. suffering. Just looking at your brief, there is no evidence or allegation that medical personnel recommended placing Mr. Nelson in the S.H.U. or that they recommended he be placed there without a walker or a wheelchair. There's no medical court did not and could not point to any medical professional who stated that in their judgment, Mr. Nelson should be in S.H.U. crawling around on the floor. So, I mean, I just think your brief could not be clearer on this point. Right, Your Honor. And that really goes to the point that that the administrative defendants were dismissed by the district court on grounds that they did not participate in the constitutional violation. But in fact, the whole decision to place him into the S.H.U. without this device was an administrative decision by the two things. The issue as to as to the as to misunderstood. But I thought that it was the prison policy that you weren't allowed to have these devices in the S.H.U. Is that correct? Well, that's somewhat unclear and certainly not clear enough to be the basis of a summary judgment. The policy was you can't have these devices in S.H.U. unless there's special circumstances. Those special circumstances were never developed in this case. But those special circumstances must be that this individual cannot ambulate, cannot stand without an assistive device. Otherwise, you're saying this chap can't walk. He can he can either lie in his bed for three months or crawl around. Now, those special circumstances must include somebody who is unable to walk. Can I ask a question? I think that you are. Say something and have you respond. It looks to me like you are kind of boxed in here. You want to argue and you did in your brief that the non doctor defendants in this case, the administrative defendants can't rely on a medical judgment of a doctor as their sort of defense, because this had nothing to do with a medical judgment. This was a purely administrative decision. That's what you just said. But I am having trouble squaring that with Carlson. I think I understand why you have to argue that. But I think it gives you a problem under Carlson, because now you're saying this is not a medical judgment. This is an administrative decision. I understand. And if I may just answer the question while I'm out of time, it's it's it's it's it's an overlap of facts. And if and if and if the law now is that what the court stated previously is siloed and you can't you can't go beyond any interpretation of those facts, then that's the law in this court will determine it. But my position is that Carlson laid out an area where there is no remedy for a constitutional tort outside of Bivens. And that's what we have here. There is no remedy for a constitutional tort outside of Bivens. And and I believe that it does. It all revolves around his medical condition and it all revolves around the treatment. If he had a walker, if he had a wheelchair. Prior to being sent to shoe, then I think it would have been even though it had been, you know, it had been denied to him on grounds that the that the medical professionals deemed to be appropriate. We know now that it was not appropriate, that it wasn't negligence not to give him that. So I think it's so intertwined that Abassi is that Abassi would under Abassi, this would be considered to be a constant set of facts. Thank you, Your Honor. Good morning and may it please the court. My name is Max Nogue. I'm an assistant United States attorney for the northern district of West Virginia. I represent the appellees in this matter. U.S.P. Hazleton, Warden John Doe. U.S.P. Hazleton, Shoe Lieutenant Doe. Dr. Gregory Mims and position assistant Lee Bird. The district court's order dismissing plaintiffs Bivens and tort claims should be affirmed for the following reasons. In Egbert, the Supreme Court made clear that creating a cause of action is a job for Congress, not the courts. Bivens claims will remain unavailable in all but the most unusual circumstances. In the decades following the Supreme Court's decision in Carlson in 1980, the court has rebuffed every request to expand the Bivens remedy. Cases sharing almost parallel circumstances, a similar mechanism of injury or other similar superficial traits with the three recognized Bivens cases do not justify an extension thereof. Instead, Bivens plaintiffs must satisfy a narrow two-step framework that was set forth in Abbasi and narrowed and clarified in Egbert. Under that now narrowed framework, Mr. Nelson's deliberate indifference claims cannot survive. The two-part test asks whether the case presents a new context that is meaningfully different from the three recognized cases and whether there are special factors, counselling hesitation before extending a Bivens remedy. There is a substantial overlap between those two steps, often leading to the single question of whether Congress is better suited to create a damages remedy. Why don't you start with why is this one meaningfully different to the extent that there is a claim here that these two doctors just consistently acted with deliberate indifference in refusing to prescribe this prisoner an assistive device. Why is that not a Carlson claim? Well, first, Your Honor, a new context can arise when special factors that previous Bivens cases did not consider are at play here. And because there are several special factors that were not considered in Carlson that are now available. You're saying this is not a meaningfully different context. You want to make a different argument? No, Your Honor, there are... She asked you about the meaningfully different context, so maybe start with that. I apologize. Thank you. Well, Carlson was a specific incident of gross medical misconduct, which led to an inmate's death. And that occurred over a period of eight hours. The decedent in Carlson was a chronic asthmatic. He was hospitalized and physicians recommended steroids and transfer to a new BOP facility. There was no examination or treatment for eight hours after the decedent went into an asthma attack. The BOP employees administered a contraindicated treatment. They used a known defective... I guess I don't understand why this is where we're starting. Are you suggesting that if it's not about asthma, it's not a Carlson case anymore? No, Your Honor. So what's the difference? Cut to the chase. Yeah. In comparison, the allegations here that Mr. Nelson has alleged have taken place in 10 separate civil actions over a period of about seven years now. And it involves a fall that took place at the Oklahoma City Transfer Center in March of 2016. And then he was transferred to U.S.B. Big Sandy, whom he sued. Then he was transferred to U.S.B. Hazleton, whom he sued, U.S.B. Kinane, and so on and so forth. So it's the length of the problem, rather, that distinguishes this, that makes this a new case? It's one of the factors that would take this into a new context. Okay. So that's what the new context is? If that's so, couldn't you take a specific portion of what happened here and say it was like the context in Carlson? No, Your Honor. I don't believe that that would be the correct analysis. That's interesting. But does the Supreme Court say that? Yes. I mean, the Supreme Court says any meaningfully different set of facts takes it into a new context. I understand that they say that. The question I'm asking you is if one portion of this was like Carlson, would we have a Carlson case? No, that would not be enough. Why not? Because any meaningfully different factual difference or factors that were considered in Carlson is the meaningful factual difference here. Again, let's assume, I understand what you're saying about the scale of what's being alleged here, but if we can just isolate out these defendants, these doctors, these non-doctors, their combined deliberate indifference through refusing to give this guy an assistive device, why is that meaningfully different from Carlson? Well, Mr. Nelson's case is really about a dispute of the medical care that he received. And in Carlson, he received no care, the decedent. That just is a way of saying he might lose his claim because this is just a malpractice claim. But I don't think whether it's a good claim on the merits or not has been identified as a meaningful difference for purposes of whether there is a cause of action. Do you see what I'm saying? I agree, yes. And I think the overarching, what takes it into a new context is the fact that in Carlson, the plaintiff had a damages or nothing remedy. And here, Mr. Nelson's claims were amenable to alternative remedies. And he exercised the administrative remedy program. He filed for injunctive relief. He could have filed a habeas petition, which he did not. So without those remedies, you would say that this is a Carlson case? No, I would not, Your Honor. I mean, you're not losing anything because you're right. There are these alternative remedies. I would not. There's no way of distinguishing it straight up. Well, there are many facts that could distinguish it. For instance. I'm talking about for Bivens purposes, okay? For Bivens purposes, he was treated. Mr. Nelson was provided treatment. He was taken to outside providers at WVU. And he was analyzed and examined. And then what distinguishes that from Carlson is there was no treatment. He was left untreated for eight hours and ultimately passed away. So, Mr. Shorman, you're getting back, though, to the point that Judge Harris brought up. You seem to be relying on the fact that the degree of alleged indifference is less. Is that correct? That's the distinction you're drawing with Carlson, that this case involved a lesser degree of indifference and, therefore, is not within Carlson? I think that would be one of the factors that would create a new context, is the fact that the allegation in Carlson resulted in the inmate's death. And here, that is not the case. So, to have a Carlson claim, you have to have the plaintiff die? No. But that would be one factor that would distinguish this case from Carlson. Also, it would be different because it's not about asthma. And I appreciate what you were saying. The Supreme Court has absolutely instructed that difference doesn't have to be huge or anything, but it does have to be meaningful. And I'm just not clear on why sort of the particular degree of alleged indifference or some of the distinctions you're pointing to are kind of meaningful. Well, I believe any factual distinction could be a meaningful difference. The court never really specified what makes it a meaningful difference. So, just like exact same facts, but instead of asthma, he had this plaintiff. Everything happens just the way it happened in Carlson, but it's not asthma. It's an underlying heart condition. Meaningful difference? I would agree that it's a meaningful difference. You think that's a meaningful difference? Yes. It's a factual distinction that required – Happens on a different day. It would require – Carlson, it happened on a Tuesday. For this plaintiff, it happened on a Wednesday. I think we're splitting hairs there. I am prepared to argue the facts at issue here in Nelson. I cannot speculate what would survive under – That's not very helpful to us because we have to make a rule that is followed in subsequent cases that gives somebody who does have these kinds of differences, give them an idea whether they have a Bivens claim or not. And you are not being helpful to us in that pursuit. I understand you want to win your case, but you have to understand where we're coming from. We want to make a precedent that other people can follow, too. I do, Your Honor, and the government is analyzing these cases individually on a case-by-case basis. I cannot speculate as to what remains under Bivens and Carlson. It would be done on a case-by-case basis. I would rely most heavily on what creates a new context in this case, which is the fact that there were numerous special factors that were not in existence when Carlson was decided and therefore not considered in Carlson. Most importantly, that would be the administrative remedy program, the exhaustion requirement that was incorporated and codified by the Prison Litigation Reform Act, and the other types of statutory recourse that Mr. Nelson would have and he took advantage of. Those were not considered to be special factors in Carlson. Carlson rather focused on Bivens as a deterrent. And the analysis in the past 43 years has changed. So are you suggesting that Carlson is not good law? If Carlson is decided, the exact same case comes up today. It's not a Bivens claim. Instead of Carlson, his name is Marlson. But every other thing is the same. I apologize to provide the same answer, Your Honor, but we would do a case-by-case analysis. You have the case. You have Carlson and you have Marlson. Exactly the same facts. Exactly the same. Every single thing is the same. Well, I mean, I believe that that would not create a new context if everything was the same. However, there would certainly be differences in the treatment that was available at that time in comparison to 40 years ago. The facility potentially that the inmate was designated to. I just a few minutes ago that all these special factors that you have the remedies and all of that were making the difference. What I'm saying to you is that none of that exists because Marlson is exactly the same situation as Carlson. Well, Marlson in a hypothetical, it would not be possible for it to be the exactly the same as Carlson because of the development in the administrative remedy program, extensive legislation in the area. There is no, there is not possible to have a Carlson claim now because there are all these new things. Is that correct? I believe that there would be several meaningful, meaningfully different factors at play. I understand that. What I'm asking you is, is it possible to bring a Carlson claim now? Well, I believe the Supreme Court did leave at least the door cracked open for future claims that do not present the new context. However, in Egbert, the court specifically said if there were special factors that were not considered in Carlson, then it automatically takes it out of the new context analysis and into step two. Well, sir, I think I, I, I credit you that you've read and understood the Supreme Court cases, but just credit us that we'd have to. And what I'm asking you is today, is it possible to bring a Carlson claim today? I believe that the Supreme Court did leave the door open for cases that do not present a new context. But you say that all these special factors. Right. So that's why I'm asking you. I believe that it would be factually near impossible to bring a case that that was identical to Carlson, given all the factors that I've discussed. That's what I thought. Let's give him a question on the merits of the district court's granted summary judgment on the deliberate indifference claims. So the district court granted summary judgment, I think, on count one. And he did that without allowing or it did that without allowing any discovery, even though the defendant had asked for discovery. Why is that OK? It would be OK because ultimately, based on the medical records that were attached as exhibits to the briefing, it at least created the understanding for the court that this was a dispute of medical care, which is not an actionable Bivens claim. Well, he's at that time. I'm sorry. I'm assuming for a second that we are at the merits that we were past the Bivens question. The findings in the district court order dismissing the case were that he was Mr. Nelson was treated. He was taken to outside facilities and opinions were developed by Dr. Mims and P.A. Berg that Mr. Nelson. Was, in essence, creating or diagnosing himself and fabricating the extent of his injuries. I think he alleges right that at least one of the nonmedical defendants saw him in the shoe crawling around on his hands and knees. And if that's true, doesn't that maybe warrant looking into? I believe it would. However, there were declarations that were attached as exhibits. A declaration of Dr. Mims stated that while Mr. Nelson or other inmates who may need an ambulatory device are not allowed to have those devices inside of the shoe, they would be provided assistance to ambulate in the shoe by correctional officers. And that device would become available upon leaving the shoe. So I believe the plaintiff is alleging that that didn't happen. And that's why he had to crawl around on his hands and knees and that at least one of the defendants saw that. And the other one, he alleges, knew that because he read his grievances while he was in the shoe saying, nobody is helping me walk around. I'm crawling around on my hands and knees. And if all of that is alleged, I guess I'm just not clear. I think I understand your point more with respect to the claim against the doctors because they are medical records. I sort of understand the logic, at least, of the idea that that might be enough to resolve the claim on the paper. But as to the non-medical defendants, it's just not 100% clear to me why discovery wouldn't have been warranted to see if these claims could be borne out. Well, the case law encourages an early resolution in some of these Bivens claims against more of officials that have decision-making power. And in this case, while the case was dismissed prior to discovery, there were exhibits, medical records, BOP records. There wasn't a declaration, say, from the lieutenant saying, no, I did not see him crawling around on his hands and knees. That's correct. However, under the current case law as it stands today, under this court's decision to take, we would take the position that it would be a conditions of confinement claim that is not actionable under Bivens. That seems like something you might have mentioned before when we were asking you whether this case was different from Carlson. So you would say that again? This case is a combination of a conditions of confinement claim as well as medical deliberate indifference. And that also creates a new context under the first step. I apologize for not recognizing that question earlier. Certainly, the decision to place Mr. Nelson in the shoe cannot be made by Dr. Mims or P.A. Byrd. That would have to be made by the warden or the unit captain to place him there. Isn't there an allegation in the complaint that he also was denied the device when he was not in the shoe? I believe that that is an allegation that was made. However, the attachments to the briefing prove otherwise. It indicates on the medical records that Mr. Nelson was issued a walker to assist with ambulation. However, there is an overarching dispute that Mr. Nelson actually needed these ambulatory devices. When he was designated to USP Big Sandy in April of 2016, just about seven months before he was transferred to Hazleton, Mr. Nelson was observed doing push-ups and different exercises in his cell, doing jumping jacks. And that was taken into consideration by the medical officials in this case. Well, was the suggestion that he had blisters on his knees and so forth, they had to be treated, was that disputed? I think for purposes of this argument, we would assume the facts alleged in the complaint is true. So he purposely hurt himself. Is that what you're saying? No, I'm assuming that the facts is true is that he could not ambulate for one reason or another. You told me he did jumping jacks so that he got the blisters, etc. He didn't have to, so he hurt himself intentionally. I would not say that we would not take the position that he did it intentionally. However, as part of the diagnosis and the determination of what Mr. Nelson needed, the fact that he was observed doing jumping jacks and push-ups would play into the physician's decision. Did I understand? Mr. Nogue, aren't you arguing disputed facts? I mean, it seems to me that this portion of your argument is making a case for allowing the case to proceed, at least as to the administrative defendants. These aren't established facts in the case, uncontroverted facts in the case that he was doing push-ups in his cell. But yet you seem to be arguing the facts of the case from your perspective. And why aren't you making a case to at least send it back as to the administrative defendant? Well, I think that this argument, for purposes of this argument, it would be addressed in two ways. At first, we looked at whether the Vivens claims were actionable any longer. And in that case, we would do an analysis on assuming the facts alleged in the complaint is true. Judge Harris had asked me a question regarding the merits of the case. And because the government filed both a motion to dismiss and a motion for summary judgment, we are disputing those facts in an attempt to establish the fact that this is a mere dispute of medical treatment, which is not actionable under Vivens. Did I understand you correctly? Did you say that I guess because there was no discovery at this point, we should accept the allegations in the complaint as true? Under a 12B6, we would. And I believe that looking as to whether Mr. Nelson, I see I'm out of time. May I answer your question? Whether Mr. Nelson's claim is actionable at the pleading stage, whether it comports with the two-step Egbert analysis, we would assume those facts as true in the amended complaint. And what about for purposes of reviewing what appears to me to be the district court's grant of summary judgment on the deliberate indifference claims? What do I do there? Do I look at the facts of the complaint, given that the plaintiff wasn't allowed to do any discovery? What do I look at? I would look at the briefing, Your Honor. We've introduced exhibits and evidence that were authenticated by declaration that would create a dispute of fact. Well, if they would create a dispute of fact, why was summary judgment granted? I'm sorry. It contradicts the facts as alleged. So where does that lead us? Well, I don't believe it needs to get to that point. Under the new case law that came out after this case was briefed, the case would end under an Egbert analysis, and there would be no reason to look at the merits of this case. Okay. If it doesn't end under Egbert, what do you think we should do? I believe that you should affirm the district court's report. And how do we do that, given that, as you say, there are exhibits now introduced by the defendant that contradict the allegations in the complaint, but the plaintiff hasn't had an opportunity to do discovery? Well, the district court found that there was no dispute of fact and that Mr. Nelson received the treatment that was applicable. I did find that. As to the doctors, I didn't quite understand what we do with the non-doctors who are not alleged to have made any medical judgment at all, made this administrative decision, knowing, allegedly knowing full well, that he couldn't walk and was crawling around on his hands and knees. Well, the warden in the shoe, Lieutenant, certainly relied on the medical advice and the findings of… It's not like there's anything in the record saying that. Well, they would not necessarily play a role in the medical decisions. The decisions to place Mr. Nelson in the shoe would be in their purview. Thank you. Thank you, Your Honours. I take it from my colleague's argument that the question is this meaningful difference, that this meaningful difference really is without any meaning, that the Supreme Court basically is saying, if you don't have a duplicate of Carlson, you don't have a Bivens claim. But the Supreme Court could have said that. The Supreme Court could have said there's no life left in Bivens, but it didn't. Close to it. And I certainly don't envy your role, Judge Martson, trying to craft this rule, given what you have here. But I think the essential case is that in Carlsbad, he was denied medical care. Now, he died in eight hours because of that. The allegation was he died within eight hours because of that from asthma. In this case, it's still going on. It exacerbated a condition because he was denied medical care. And, you know, the facts, I think, are very much in dispute. This idea that he was doing jumping jacks, we dispute that observational piece of evidence because we have what is undisputed in October 2017, that from Dr. Druro, the West Virginia doctor, the outside doctor, that everything Nelson had been saying about his condition was true. Neurological disorders, imbalance disorders, recommended him for MRIs and everything else. So the fact that these medical professionals assumed he was lying, given all his conditions, given the persistency of his symptoms, is a denial of medical care, and it's right in the Carlsbad. I'm saying Carlsbad, sorry. It's right in the crosshairs. I don't see how there's any meaningful difference there. Just the very first thing that you pointed out. I mean, I'm sure you have read these Bivens cases from the Supreme Court. The whole, you know, the Bivens claim gets smaller and smaller and smaller and smaller. And any difference, not an insignificant one, but any difference in the context is a reason not to find a Bivens claim. And isn't the very fact that you told us that in Bivens the death occurred after eight hours, and here there were months and months and months. Is that a different context? Well, it's a different fact, definitely. But a different context, no, I don't believe so, Your Honor. A different context would be that it didn't involve medical negligence. It didn't involve professional negligence. The fact that he died and wasn't subjected to four years of punishment because of a misdiagnosis might be to his benefit. The problem is there have been subsequent attempts to find a Carlson claim that have also involved miscare, medical miscare in prisons, and none of them have been found by the Supreme Court to be sufficiently like Carlson to succeed. And I just wonder, given all the language, that this isn't a difference. Your Honor, I do believe that it's set up in Carlsbad because it goes from an initial, immediate misdiagnosis. There's a fact that's very much aligned between the two cases. In Carlsbad it was, hey, this guy's choking, let's not do anything about it, shift him off to an emergency room, and he died. In this case, he came to them unable to walk, and they said, oh, he's faking it, and didn't bother looking into it again. For two years. So there's very much two facts in line. I think what might trip us up in this case, but I believe can still put it within Carlsbad, is the conditions of confinement, which my colleague raised. Now, it's true. The conditions of confinement in this case exacerbated his condition, but it doesn't mean that there wasn't an existing condition that was not treated as he went into those conditions of confinement. So the conditions of confinement is an overlay, not the root cause of this man's problem. You say that, but I'm not going to be able to find it. As I read count one of your complaint, this case really was all about the placement in the shoe. Is that not right? I'm never going to be able to find it. He suffered his injuries, obviously, before he went into the shoe. He presented himself with this condition. There are factual allegations to that effect in your complaint, but it's not what count one says. Count one says he went into shoe and they didn't give him a walker. Right. He went into shoe. They didn't give him a walker. They didn't give him that. And he was there for three months the first time. Even after the first time, when he came out, we know that they understood the situation because the prison treated him for the sores. My time's up. Unless you have further questions, I'll rest. Judge Keenan, do you have any questions? No, thank you. Thank you very much. We are sorry we can't come down and shake hands, as is our custom, but we thank you very much for your help today and wish you well.
judges: Pamela A. Harris, Diana Gribbon Motz, Barbara Milano Keenan